IN THE

# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF NEW JERSEY,

### AT FEBRUARY TERM, 1832.

JOHN DEN on the demise of SAMUEL J. READ v. MATTHIAS RICHMAN.

By the "act respecting conveyances" passed June 7, 1799, and the supplement thereto, passed November 26, 1801, a deed of lands duly executed and acknowledged, or proved, is valid and operative, and has full force and effect between the parties thereto, and upon their respective heirs, although never recorded.

A deed of lands, if recorded within six months, is valid and operative, and has full force and effect, against a subsequent deed to a *bona fide* purchaser without notice, although such subsequent deed is first recorded within that period.

A deed of lands not recorded within six months, may be subsequently recorded.

A deed of lands not recorded within six months, although afterwards recorded, is not valid and operative against a subsequent deed to a *bona fide* purchaser, without notice, if such subsequent purchaser has lodged his deed to be recorded, before the prior deed is lodged with the clerk, for the same purpose.

Den *v.* Richman.

A deed of lands, although not recorded within six months, is valid and operative, and has full force and effect against a subsequent deed to a *bona fide* purchaser without notice, if such prior deed is recorded, or lodged with the clerk,
to be recorded, before the subsequent deed is lodged with the clerk to be recorded.

———

This was an action of ejectment for lands in the county of
Salem, and was argued at the last term of this court, on a state
of the case, agreed upon by the attorneys of the parties, at the
circuit, when the cause was called on for trial, as will appear
by the following copy of the postea.

The above cause being noticed for trial at the Circuit Court,
held at Salem in and for the county of Salem, on the eighth day
of December, in the year of our Lord, one thousand eight hundred and thirty, by the Honorable Gabriel H. Ford, esq. one of
the justices of the Supreme Court of New-Jersey, was regularly called on for trial: Whereupon the said parties, by their
attorneys, agreed to the following state of the case.

*Case on the part of the Plaintiff.*

1. Benjamin B. Cooper, being lawfully seized and possessed
of the premises in question, by deed, bearing date the twenty-
third day of June, eighteen hundred and nineteen, executed by
himself and Sarah, his wife, in due form of law, for the consideration therein mentioned, did convey unto one John B. Wallace, the said premises, together with divers other lands, situate in the counties of Gloucester and Cumberland, which deed
was duly acknowledged by the grantors, on the twenty-fourth
day of June, eighteen hundred and nineteen, before Jeremiah
J. Foster, esq. one of the masters of the High Court of Chancery, and on the first day of January, eighteen hundred and
twenty, was recorded in the clerk's office of the county of Gloucester, in *Liber. E. E. of Deeds, folio* 398, *&c.* by Thomas Hendry, clerk of the said county, and on the twenty-fourth day of
May, eighteen hundred and twenty, was received and afterwards recorded in the clerk's office of the county of Salem, in
*Book H of Deeds, folio* 384, *&c..* by James Newell, esq. clerk of
the said county of Salem.

2. The said John B. Wallace, being thus seized, by his deed

Den *v.* Richman.

bearing date the twenty-eighth day of May, eighteen hundred and twenty-one, executed in due form of law, did convey to Mary M. Wallace, the said premises by the description of all the several tracts and parcels of land situate, lying and being in the county of Salem, which the said Benjamin B. Cooper and wife, by the before mentioned deed, conveyed to him in fee.; which deed was in due form of law, acknowledged before Richard Peters, esquire, Judge of the District Court of the United States for the Pennsylvania District ; and was received in the clerk's office of the county of Salem, on the twenty-third day of June, eighteen hundred and twenty-one, and recorded in the clerk's office of the said county, in *Liber T of Deeds, folio* 509, by James Newell, esquire, clerk of the said county.

3. The said Mary M. Wallace being thus seized and possessed, by deed, bearing date the twenty-ninth day of May, eighteen hundred and thirty, for the consideration therein mentioned and expressed, did convey to the lessor of the plaintiff, the said premises in fee, together with several other tracts in Salem and Gloucester, which deed was, on the same day, in due form of law, acknowledged before George K. Drake, esquire, ond of the justices of the Supreme Court, and on the fourth day of June eighteen hundred and thirty, recorded in the clerk's office of the county of Gloucester ; and on the eighth day of June eighteen hundred and thirty, was recorded in the clerk's office of the county of Salem.

4. The defendant was in possession of the premises in question at the time of the service of the declaration in ejectment in this case.

5. The defendant confesses lease, entry and ouster.

*Case on the part of the Defendant.*

6. On the twenty-seventh day of October, eighteen hundred and nineteen, judgment was duly entered in the Supreme Court of New-Jersey, against Benjamin B. Cooper, Jeremiah Buck and William Potter, at the suit of Daniel and Matthias Richman, for the sum of three thousand five hundred dollars of debt and three dollars costs of suit. Whereupon execution was issued, directed to the sheriff of the county of Salem and deliv-

ered to him on the fourth day of November, 1819, and by him levied on the premises in question, as the property of the said Benjamin B. Cooper,

7. The said sheriff of the county of Salem, to wit, Jonathan Richman, esquire, by virtue of the said execution and levy, duly advertised the premises in question for sale, and on the fifth day of May, eighteen hundred and twenty, duly sold the same to the defendant, Matthias Richman, at public vendue, and conveyed the same to him by deed duly executed and delivered the same day, for the consideration therein mentioned, which was duly acknowledged and recorded on the fifteenth day of June, eighteen hundred and twenty, and thereupon, the said Matthias Richman, took the possession thereof, and has held the same ever since.

8. The several tracts of land mentioned and described in the deed from Sheriff Richman to Matthias Richman aforesaid, are contiguous and nearly adjoining each other.

9. Charles Ellis, by the judgment of the Supreme Court of New-Jersey, on the fifth day of January, eighteen hundred and twenty-five, recovered against the said John B. Wallace, the sum of $5791 78, of damages and costs, upon which judgment, execution was issued to the sheriff of the county of Salem, returnable to February term, eighteen hundred and thirty, and the premises in question levied on and sold, and purchased by John Hulme, for sixty-five dollars, on the third day of June, eighteen hundred and thirty; and the said sheriff conveyed the same to the said John Hulme, by deed, dated the same day, and duly acknowledged on the fifth day of the same, but said deed has never been recorded. At the time the said judgment was entered and execution issued, the said Charles Ellis and John Hulme, severally had full notice of the said several deeds from Benjamin B. Cooper to John B. Wallace, and from John B. Wallace to Mary M. Wallace, and also the said John Hulme, at the time he purchased the same at sheriff's sale as aforesaid, had full notice of the several deeds and also of the deed from Mary M. Wallace to Samuel J. Read, and bought the same as the agent, and for the use of the said Samuel J.

Read, to strengthen his title, and has since conveyed the same to him.

10. If upon the foregoing facts the court should be of opinion that the plaintiff is by law entitled to recover, then judgment to be entered for the plaintiff, with six cents damages, and six cents costs. And if the court should be of opinion that the plaintiff is not entitled to recover, then judgment to be entered for the defendant with costs.

11. Either party to be at liberty to turn this state of the case into a special verdict and bring a writ of error within one term after judgment shall be entered.

*Wall* and *Williamson* argued for the plaintiff and cited *Leam.* and *Spicer*, 162, 221, 222, 369, 400, 401, 541; *Allison* 133; *Pat.* 398, *sec.* 8; *Bloom.* 47; *Rev. Laws*, 747, 433, *sec.* 12.

*Daniel Elmer* and *Lucius Q. C. Elmer*, argued for the defendant, and cited *Pat.* 371, *sec.* 12; 1 *Peters Sup. C.* 552; *Pat.* 398; *Stat. of Enrolments*, 27 *Hen.* 8; 7 *Serg. & R.* 786; 4 *John. R.* 216; 13 *John. R.* 471; 4 *Cowen*, 599; *Bloom.* 47; 19 *John. R.* 282; *Rev. Laws*, 433, *sec.* 12.

EWING, C. J. On the 23d day of June 1819, Benjamin B. Cooper was, as both parties in this cause admit, seized and possessed of the premises in question.

The lessor of the plaintiff claims them under a deed made by Cooper, bearing date on the day just mentioned, acknowledged on the 24th day of the same month and recorded on the 24th day of May 1820.

The defendant claims them in the following manner. On the 27th day of October 1819, a judgment was signed against Benjamin B. Cooper, on which a writ of fieri facias was issued, and on the 4th day of the ensuing month of November, was delivered to the sheriff of the county of Salem, who took in execution the premises in question, as the property of Cooper. Having, on the 5th day of May 1820, duly sold the premises to the defendant in this action, the sheriff made and delivered to him on that day a deed in due form, which was acknowledged and recorded on the 18th day of June 1820. Therefore, the defendant, Richman, took, and has ever since, held the possession.

Den *v.* Richman.

Both deeds are for valuable consideration; and there is no proof or allegation of want of good faith in either of the grantees.

The deed on. the part of the plaintiff, was first executed and delivered, but was not recorded or lodged to be recorded within six months, nor until after the judgment had been obtained, and the deed executed and delivered under which the defendant holds. And the deed on the part of the defendant, was not recorded or lodged to be recorded until after the deed of the plaintiff had been recorded. Upon their respective operation and the effect of the statutes for the recording of deeds the result of the controversy depends between the parties now before us.

Deeds of bargain and sale, and such are the deeds now under consideration, are, and ever since the settlement of this state, have been, the usual mode for the transfer and conveyance of lands by the act of the parties. Deeds of lease and release have, in very few and rare instances been used. The deed of bargain and sale derives its potency chiefly from an early act, passed by the provincial legislature on the 17th of March 1713-14, enacting that every person to whom the use of any tract of land has been conveyed by deed, grant, or other legal conveyance, shall be deemed to be in as full and ample possession of such lands, as if possessed thereof by solemn livery of seizin and possession. In England, the deed of bargain and sale was known and sometimes adopted before their correspondent statute of the 27th of Henry 8th, of uses, and would, it may be presumed, from its greater simplicity and privacy than the ancient feoffment, have afterwards become the common assurance had not an act of Parliament, in anticipation of this consequence, been soon after passed, requiring an enrolment of a bargain and sale of an estate of freehold. To avoid this provision, the conveyance by lease and release was adopted, and is now there, the ordinary means of the transfer of real estate.

The propriety, utility and safety, of recording instruments for the conveyance of land, and on which titles to real estate depended, became the subject of early care and attention in the Colony of New-Jersey, as might justly be expected from the prudence and sagacity, the liberality and wisdom, and the pure and genuine principles of civil and religious liberty, which em-

Den *v.* Richman.

inently mark and distinguish the proprietors and settlers and their early measures and proceedings. In the fundamental constitutions of East-Jersey in 1683, (*Leam. & Spicer,* 162) and in the concessions and agreements of the proprietors of West-Jersey, in 1676, (*L. & S.* 399) provision is made for the recording of deeds, which, if left unrecorded, should be void. In West-Jersey, an act of the colonial legislature was passed in 1695, (*L. & S.* 541) inflicting a penalty of twenty shillings, on every person who should neglect or refuse to bring his deed to the proper clerk, to be recorded within six months after its execution. An act of East-Jersey in 1698, (*L. & S.* 368) requires deeds to be recorded in the register's office within six months after their date, being first acknowledged or proved; and a deed so recorded was to be good and effectual, notwithstanding any other conveyance, though dated before such deed so registered.

On the 17th of March 1713–14, an act of the provincial legislature was passed, (*Allinson* 74) which recites that there is no record of deeds kept within the counties; and after providing for the manner of acknowledging and proving deeds, it directs the clerks of the several counties, to keep books for the recording of deeds, and declares that such records of deeds, duly acknowledged or proved shall, when produced by the respective clerks in any court, be as valid as if the original was then and there produced and proved; and that in the county where the secretary's office is kept, deeds and evidences relating to the titles of land, shall only be recorded there. This act remained in force until 1721, when it was disallowed by the king in council. Another act of the same import, was passed in 1727–8, and disallowed in 1731. I have not been able to trace the reasons of the disallowance of these acts, which appear so wise in themselves and so earnestly sought by the representatives of the people. In 1743, another act was passed, which received the royal assent in 1746, prescribing the mode of the acknowledgment and proof of deeds, directing that such deeds so acknowledged or proved might be recorded, and providing that deeds so acknowledged or proved, and copies from the records, should be good and sufficient evidence in any court of the colony. The place where deeds should be recorded, is expressed in this act,

Den *v.* Richman.

in general, and not definite terms, and the practice seems, from the preamble to another act passed December 14th, 1784, to have been to record them in the secretary's office only, which being found inconvenient and expensive, the clerks of the several counties were, by the latter act, directed to provide and keep books and therein to record such deeds as should be offered to them for that purpose ; and copies therefrom, were to be admitted in evidence.   The great purposes of these acts, which continued in force until 1799, seem to have been, the safety of titles by the preservation of their muniments, and to provide a more easy and permanent mode of proof than was done by the common law ; but there is no peremptory requisition to record the deed and no preference given to a recorded over an unrecorded instrument.   On the 7th of June 1799, an act, and on the 26th of November 1801, a supplement thereto, were passed, the details of which, so far as they respect the subject before us, will be hereafter stated.   These were in force when the transactions occurred out of which the present cause has grown ; and they remained the law of the land until the first day of January 1821, when the act of June 1820, went into operation by which we are since governed.

I have presented this view of the law, not merely for the sake of its history, however interesting, but to show, that prior to, and independent of, the statutory regulations made in and since the year 1799, a deed of bargain and sale unrecorded, did, by. the operation of the act of 1713–14, divest the grantor of all his interest, and conveyed to the grantee all the estate which the grantor held and could lawfully transfer.   No record was required to give it validity.   The grantor could make no subsequent deed which would extinguish or supersede the transfer, nor was any publication necessary on the part of the grantee, or to protect him from a subsequent bona fide purchaser, provided he was in no wise tainted with actual fraud.

The act of June 1799, and the supplement, having been in force when the deeds before us were made and recorded, claim our particular attention.   The former provides for the recording of deeds in the several counties, and in the 8th section enacts, that every deed or conveyance of lands which should be made or executed on or after the first day of January 1800,

should be void and of no effect against a subsequent bona fide purchaser or mortgagee for a valuable consideration, not having notice thereof, unless acknowledged or proved and certified as thereby directed, and lodged within six months after the time of signing, sealing and delivering the same with the clerk of the Court of Common Pleas of the county in which the lands are situate, to be recorded by him; provided nevertheless, that such deed or conveyance should, as between the parties and their heirs, be valid and operative. A doubt having arisen upon the terms of this act, whether a deed made after the day mentioned in it, and not lodged in the clerk's office within six months after its execution, might be recorded, the supplement was passed. The preamble recites this doubt as the cause of the enactment. The first section then declares that the clerks of the several counties be, and are authorized to record all deeds and conveyances of lands made and executed, or thereafter to be made and executed, and duly acknowledged or proved according to law. This clause, it will be observed, is very general in its terms, comprehending all deeds, which have previously been, or should afterwards be made, and authorizing them to be recorded not merely within six months, but at any subsequent time. The act of 1799, having prescribed the operation and effect of a deed recorded within six months, by declaring how far, and against whom it should be invalid, if not lodged to be recorded within that period, it now became necessary, as deeds were allowed to be recorded after the expiration of the six months, to declare the effect of such deeds when so recorded. The first section of the supplement, therefore, proceeds by a proviso to enact that every deed or conveyance of lands made and executed on, or since the first day of January 1800, and prior to the passing of this act, should be void and of no effect against a subsequent bona fide purchaser, for a valuable consideration, not having notice thereof, unless recorded within six months after the passing of the act, and also prior to the recording of any other deed or conveyance for the same premises, but that such deed or conveyance should, as between the parties, and their heirs, be valid and operative. Now, the first clause, as already observed, comprehending all deeds, those made after, as well as those executed before, the passing of the act. But this proviso

relates only to such as were made before its enactment, and does not cover the whole field of the first clause. The legislature, therefore, proceed to supply the deficiency by a second section, and therein enact, that when deeds or conveyances shall be lodged with the clerk or recorded in his office after six months from the execution of the same, such deed or conveyance shall not operate against a bona fide purchaser for a valuable consideration, not having notice thereof, whose deed or conveyance for the same lands shall be previously lodged with the said clerk or recorded. We cannot suppose the legislature meant, in this section, to speak only of deeds made prior to this act, because we should thereby accuse them of repeating in the second section, the provision already made in the first, and because without doing so, there is a subject to which the second section may be applied justly, properly, and according to its fair import.

By these acts, the following rules are, among others, clearly established.

1. A deed of lands duly executed and acknowledged or proved, which I shall hereafter, to avoid tautology, assume as comprehended within the term, deed, is valid and operative, and has full force and effect between the parties thereto and upon their respective heirs, although never recorded.

2. A deed of lands, if recorded within six months, is valid and operative and has full force and effect against a subsequent deed to a bona fide purchaser without notice, although such subsequent deed is first recorded within that period of time.

3. A deed of lands not recorded within six months, may be subsequently recorded.

4. A deed of lands not recorded within six months, although afterwards recorded, is not valid and operative against a subsequent deed to a bona fide purchaser without notice, if such subsequent purchaser has lodged his deed to be recorded before the prior deed is lodged with the clerk for the same purpose.

5. A deed of lands, although not recorded within six months, is valid and operative, and has full force and effect against a subsequent deed to a bona fide purchaser without notice, if such prior deed is recorded or lodged with the clerk to be recorded before the subsequent deed is lodged with the clerk to be recorded.

The truth of these positions will be the more manifest, if we bear in mind these two considerations, first, that independent of the acts, the deed, though unrecorded, has full operation and effect, that is to say, defeats a subsequent purchase and deed, however truly made in good faith and without notice ; and secondly, that the words of the acts serve to declare, not where a deed shall operate, but where it shall be void and of no effect. The consequence of which is, that the deed is to be void and of no effect only in the cases declared by the statute, and in others not within the statute, the natural, original and independent effect of the deed remains.

Let us now proceed to apply these principles to the facts before us.

Matthias Richman, the defendant in the action, is a purchaser of the premises in question. He who buys at sheriff's sale, pays the consideration money and procures a deed, is fully and literally entitled to this character and description. He is so called in the act making land liable to be sold for the payment of debts, and while he is within the terms of the acts for the recording of deeds, he is, as much as any other purchaser, within the reason of the safety and protection those acts were designed to afford. Matthias Richman, is also a purchaser, for a valuable consideration, and there is no proof of notice to him, express or implied, of the previous deed made by Cooper, prior to the time it was put upon record. But he is not protected who can merely say, I am a purchaser, for a valuable consideration, in good faith and without notice. He must be able farther to say to the former purchaser, your deed has not been recorded within six months, and mine has been first lodged with the clerk to be recorded. Matthias Richman is unable to say so. His deed was not "previously lodged with the clerk." Consequently, his deed is not one of that description against which the antecedent deed is forbidden to operate. And hereby will appear the inapplicability in the present enquiry, of the case of *Steel's Lessee* v. *Spencer*, 1 *Peters S. C.* 559, cited and relied on by the defendant's counsel. The registry act of Ohio, there in question, did not require the subsequent deed to be recorded. Justice Trimble said, " The plaintiff's deed not being recorded, the statute avoids it in terms as against all subsequent purchas-

Den *v.* Richman.

'ers for valuable considerations, whether their titles be recorded or not."

There are, however, it is argued, circumstances in this case, which entitle Matthias Richman to an higher station, and the deed he holds to a more powerful influence, than if he were a purchaser from Cooper himself, or the deed had been made immediately by the latter. He holds under a judgment which was rendered, and an execution which was levied on the premises, before the deed from Cooper under which the plaintiff claims, was recorded, and by virtue of a sheriff's deed, the effect and operation of which, is declared by the act regulating the sale of lands for the payment of debts.

We are now to examine the case in both these points of view.

In the first place then, was this judgment a lien upon the premises? The solution of this question, it is obvious, must depend on the acts relative to the recording of deeds. If those acts had not been passed, or if they have no influence in the present case, the deed made by Cooper, according to its natural effect, must have divested him of all interest in the premises, and left nothing in him whereon the judgment could fasten itself. It is too plain for argument, that on the 1st day of June 1799, a judgment would form no lien on land transferred by a defendant on the 1st day of June of the preceding year, although the deed remained unrecorded, If there was a lien, it must have attached on that "*scintilla juris,*" if I may so express myself, which is kept alive by the provisions of those acts in favor of certain descriptions of persons against whom they declare that a deed unrecorded in due season, or not previously lodged to be recorded, shall not operate, but shall be void and of no effect.

Admitting then, that the purchaser succeeds to the place and rights and protection and preference of the plaintiff in the judgment, and perhaps it may be so, as otherwise the lien, if there is one, would seem to be of no value, the question recurs, Is a judgment creditor within the acts? Shall he prevail over a prior unrecorded deed? Shall a deed which is lodged to be recorded after six months, not operate. against a person who obtains a judgment against the grantor of the deed? These questions must be answered in the affirmative to benefit Richman, inasmuch as the stream cannot rise higher than its source.

Now the class of persons against whom the deed is not to operate is described by the term, purchaser; a phrase familiar and well understood in legal lexicology. And this kind of purchaser is farther identified, a purchaser by deed or conveyance, which may be recorded, and which, for that purpose, may be lodged with the Clerk of the Court of Common Pleas of the county in which the lands are situate. If then, there was an ambiguity in the term, purchaser, which standing alone, might give some encouragement to the judgment creditor, his claims are entirely repudiated by the clearly excluding qualifications which are attached to it. In the act of June 1820, the judgment creditor is introduced by name, and mentioned in the same sentence with the purchaser; and the argument is very strong, that a legislative declaration is thereby furnished that the latter does not, by general construction, or in the meaning of the antecedent act, comprehend the former.

The books contain a number of cases wherein the distinction I have suggested between these characters, is expressly recognized. In *Brace* v. *The Duchess of Marlborough*, 2 *P. Wms.* 491, The Master of the Rolls said, " One cannot call a judgment creditor, a purchaser." In *Lessee of Heister* v. *Fortner* 2 *Binney*, 46, Justice Yeates said, " A judgment creditor is not to be considered as a purchaser or mortgagee within the words or spirit of the supplement to the recording act. Neither the preamble, enacting clause, or exception, embraces the case of a judgment creditor, and if the legislature had meant to include such creditors, they would have so declared themselves in clear and unequivocal terms." He then refers to a case wherein the matter had been decided. In *Kauffelt* v. *Bower*, 7 *Serg. & R.* 82, Duncan, J. held that a purchaser at sheriff's sale is, and a judgment creditor is not, a purchaser under the act for recording deeds. In *Jackson* v. *Dubois*, 4 *John*, 216, the lessor of the plaintiff claimed under a sheriff's sale by virtue of an execution against Tunis Sammons. The defendant claimed under a mortgage given by Sammons. The mortgage was dated in 1800, before the judgment, but was not registered until afterwards, in 1802. The plaintiff's counsel insisted, among other things, that as a purchaser at sheriff's sale he came in under the judgment, and acquired all the interest which was bound by it; that his

title referred back to the judgment; that a judgment creditor ought to be considered and treated as a bona fide purchaser; that his lien was perfect and the title of the mortgage, until the registry was imperfect: But the court referring to the statute which directs that no mortgage shall defeat the title or interest of any bona fide purchaser, unless duly registered, said, There was nothing in the statute which gave a preference to a judgment docketed, over an unregistered mortgage. The judgment being by act of law, does not destroy the lien acquired by an unregistered mortgage, nor gain a preference over it. And they rendered judgment for the defendant. The case of *Sample* v. *Burd*, 7 *Serg, & R.* 286, was cited on the argument by the defendant's counsel, because the Court there held that a mortgage not duly recorded, is not a lien on the land against a subsequent judgment creditor. This case when examined, does not impugn, but supports the distinction I have suggested. It turns on the statute of Pennsylvania, which enacts that " no mortgage shall be good or sufficient to convey any freehold or inheritance, unless acknowledged or proved and recorded within six months after the date thereof." The court, in that case, say, " In the case of a mortgage, no estate passes, unless the deed is recorded within six months. But very different it is, where the conveyance is absolute. There the law does not declare it null; the estate passes; it is declared void only against subsequent purchasers or mortgagees for valuable consideration." And again. " The different consequences of not recording a mortgage and not recording a conveyance, are distinctly marked. They do not rest on the same footing. In the one, no estate passes. In the other, the estate does pass against all but subsequent mortgagees and purchasers." And again. " A mortgage not recorded within six months, has no lien by relation, but it is a lien from the entry on the record, and obtains against a judgment entered subsequent thereto.

If then, in the case before us, the defendant, Richman, is entitled to the immunities of the judgment creditor, he will not be thereby protected from the operation of the previous deed.

In the other view of the subject, the argument to sustain the preference of the sheriff's deed to Richman is founded on the language of the 12th section of the act rendering lands liable

to be sold for the payment of debts. *Rev. Laws*, 433. The sheriff shall make to the purchaser, " as good and sufficient a deed or conveyance for the lands so sold, as the person against whom the writ of execution was issued, might or could have made for the same, at or before the time of rendering judgment against him or her; which deed or conveyance shall transfer to and vest in the purchaser, as good and perfect an estate in the premises therein mentioned, as the person against whom the said writ of execution was issued, was seized of or entitled to at or before the said judgment, and as fully to all intents and purposes, as if such person had sold the said lands to such purchaser and had received the consideration money and signed, sealed and delivered a deed for the same." Now it is manifest, the whole force of this section is expressed in the first clause, in how many forms soever the idea may be presented, or how frequently soever repeated. As good and sufficient a deed as the defendant might make at or before the judgment would convey as good and perfect an estate in the premises as he was seized of or entitled to, and he would have done so much and no more if he had sold the lands, received the consideration money and signed, sealed and delivered a deed. What then if Cooper, in the present case, had, at the time of the judgment, and instead of the rendition thereof, against him, made to Matthias Richman, as good and sufficient a deed for these premises as he then might or could have made. What if he had then sold the lands, received the consideration money, and signed, sealed and delivered a deed for the same? What if he had then transferred to the purchaser, as good and perfect an estate as he was seized of or entitled to? The answer is obvious. There can be but one. Such a deed, if recorded or lodged to be recorded before the previous deed from Cooper was lodged to be recorded, would prevail over it. Against such a deed first lodged to be recorded, a previous deed by Cooper should not operate. But if the previous deed by Cooper should be first lodged to be recorded, though after six months from its execution, its efficacy is not impaired, nor its power to vest the premises in the grantee, in any wise affected.

Upon the case before us, and according to what I deem the sound construction of our acts of the Legislature, I hold that

the deed under which the plaintiff claims is sufficient to support him, and that he is entitled to judgment.

FORD, J., concurred with the Chief Justice.

DRAKE, J. The lands in controversy, in this case, are situate in the county of Salem, and were, in 1819, owned and possessed by one Benjamin B. Cooper; who conveyed them to one John B. Wallace, by deed, bearing date the 23rd day of June, 1819 ; which deed was duly recorded in the registry of deeds of the county of Salem on the 24th day of May, 1820.

The lessor, of the plaintiff derives title under the said John B. Wallace.

The title of the defendant is founded on a judgment duly entered, against the said Cooper and others, on the 27th day of October, 1819 ;—on which a fi. fa. was issued and the premises in question levied on and sold to the defendant by the Sheriff of Salem ; who executed to him a deed for the same, bearing date the 6th day of May, 1820 ; which was duly recorded on the 15th day of June, then next ensuing, in the registry of deeds of Salem county.

The question is, which of these deeds shall be preferred? And this brings up, for our consideration, the true construction of our registry acts, applicable thereto.

By the 8th section of the act, entitled " An act respecting conveyances," passed the 7th day of June, 1799, it is enacted, " that every deed or conveyance of lands, tenements or hereditaments, lying and being in this state, which shall be made and executed on and after the first day of January, in the year of our Lord one thousand eight hundred, shall be void and of no effect, against a subsequent bona fide purchaser, or mortgagee, for a valuable consideration, not having notice thereof, unless such deed or conveyance shall be acknowledged, or proved, and certified as by this act is directed, and be lodged within six calendar months, after the time of signing, sealing and delivering the same, with the clerk of the Court of Common Pleas of the county, in which the said lands, tenements or hereditaments are situate, to be recorded by the said clerk : Provided always, that such deed or conveyance shall, as between the parties and their heirs, be valid and operative."

This section, if it remained in force, at the time that the con-

veyances, out of which this controversy has arisen, were made would appear to indicate decisively which should be preferred. The conveyance to Wallace was not recorded within six calendar months, but was withheld from the public records, from the 23rd day of June, 1819, until the 24th day of May, 1820, a period of about eleven months. In the meantime, a judgment was entered against the former owner, an execution sued out and levied on these lands as his, a public sale took place, and the defendant became a bona fide purchaser of the same, and received a conveyance on the 6th day of May, 1820,—eighteen days before he had any actual or implied notice of the previous sale to Wallace. Is not this prior conveyance rendered, by the act, inoperative as against the defendant?

This obvious application of the act is resisted by the counsel for the plaintiff on several grounds. And, first,—because, they say, that no title could be derived under the judgment, obtained against Cooper, after he had conveyed to Wallace, for at the entry of that judgment, there was no land in Cooper that it could bind. The fi. fa. directed the sheriff to levy on the lands of which he was *seized*, on the day the judgment was entered;—but he was not *seized* of these lands, for he had already conveyed the seisin to Wallace.—This reasoning is more plausible than sound. An act may be operative in one point or view, and wholly void in another. This is declared in almost so many words by the section above quoted. If the defendant be *a bona fide purchaser*, the previous unrecorded conveyance *shall have no effect against him*. How then can we say that it *had the effect* to convey away the seisin, so as to defeat the defendant's title? The same principle is declared by the statute of frauds, *Rev. Laws* 148, and is fully recognized in cases of fraud by the common law. The conveyance is good between the parties, but good for nothing when tainted with fraud, or opposed to the registry acts, as respects third persons, standing in the relation of bona fide purchasers.

2d. Because, it is said, that a purchaser at sheriff's sale is not the kind of purchaser contemplated by the statute;—that, that refers to alienations made directly by the owner. But this is an act for the prevention of frauds, and should be liberally construed. There is no well-founded distinction between pur-

chasers at sheriff's sale, and purchasers at private sale. The term *purchaser* is equally applicable to both, and good policy requires that the former should be protected as well as the latter. And the objection as to *seisin* is equally strong against a private sale, as against a sale by virtue of an execution ; for if, by reason of the first deed, there was no estate left in the defendant, for the purposes of the levy, there could be none to be transferred by the private conveyance. The cases are alike in reason, and the legislature, by the 12th section of the act, *Rev. Laws* 430, say, that the sheriff's deed shall transfer as good and perfect an estate in the lands, to all intents and purposes, as the defendant in execution could have done, by executing a deed for the same. This construction is given to similar language in the registry acts of New-York, by the courts of that state,—See 4 *John.* 216 ; 13 *do.* 471 ; 19 *do.* 282 ; and 4 *Cowen*, 599 ;—and in the statutes of Ohio, by the Supreme Court of the United States, in the case of *Steele's lessee* v. *Spencer and others*, 1 *Peters*, 552.

3d. It is insisted that this 8th section of the act of 1799, did not remain in full force, but was, by the 2d section of the act, passed the 26th day of November, 1801, (*Bloomfield's Laws*, 47) greatly modified and altered, so that a bona fide purchaser, after the passage of that act, was not protected against a prior deed not recorded within the six months, unless his deed was first lodged with the clerk for that purpose.

The construction of this latter act, creates the most serious difficulty to be encountered in this cause. The words will certainly bear the interpretation contended for ; and yet I am not convinced that it is the sound one.

This is not a case where the first deed was actually lodged, or recorded before the *execution* of the second deed. In such case, I should have no doubt that the first deed, even if recorded after the expiration of the six months, should prevail because the subsequent purchaser, by resorting to the public records, might have been apprised of it ; and therefore he should be considered as having notice, if, with reasonable care, he might have had it. A public record is notice to all the world.

But this is a case where the subsequent purchaser, without notice, actual or implied, of any former conveyance, bought at

Den *v.* Richman.

sheriff's sale, paid his money, took his deed and had it placed on record in forty days thereafter. Such a title, I am not willing, unless compelled by the manifest intention of the legislature, to have cut off and destroyed by a deed which had been given more than ten months before the sheriff's sale, and was not then on record. And I am persuaded that it was not the intention of the legislature to produce such a result, for the following reasons.

1st. The act of November 26th, 1801, purports to be a mere explanatory act of that of 1799, in another particular, and does not profess to repeal any part of that act. It is introduced by the following preamble, " Whereas doubts have been entertained, whether deeds and conveyances of lands, tenements and hereditaments, made and executed since the first day of January one thousand eight hundred, and duly acknowledged and proved according to law, and not lodged in the clerk's offices of the respective counties of this state, within six months after the time of executing the same, may be recorded in their offices ; therefore, &c."—But upon the construction contended for, the 2d section of this act would become a substitute for the 8th section of the other, introducing entirely a new measure of diligence as necessary to a purchaser's safety. Under the first, the purchaser was entitled to six months to record his deed ; under this, not to a single hour. Had the legislature intended to work so important a change in the 8th section, it appears to me, they would have referred to it in some manner, and not have suffered it to appear to stand in full force, and purchasers thereby to be entrapped, by relying on its provisions.

2d. Had this new principle been intended to have been introduced, it would probably have been continued by the legislature in the act of June 5th, 1820, (*Rev. Laws* 747) ; but it is not. The first section of that act follows in this respect, the 8th section of that of 1799, merely reducing the time from six months to fifteen days. The legislature left the act of 1799 to operate until the first day of January ensuing ; but repealed that of 1801, at once. This strengthens the idea, that they deemed the latter act to be merely explanatory of the former ; and inasmuch as the first section had ceased to operate, and the second made no material alteration in the original act, this repeal

Den *v.* Richman.

left the law unchanged, until the ensuing January, agreeably to their manifest intention.

3d. Both acts may have force and meaning, by supposing the second section of the act of 1801, to operate merely in cases where both grantees are in default. When both neglect to record in time, the preference is very properly given to him who records first.

4th. The other construction introduces an odious distinction between the first and second conveyance; enabling the grantee, if he happen to be the first, to rest in safety for six months, but if he be the second, not for a single day.—There is no reason for this distinction, and it is manifestly unjust, and opposed to the spirit of the registry acts, to permit a party to hold a deed in his pocket, over six months, say, for years, and thus expose subsequent purchasers to imposition, and then, to gain a preference over such purchaser, notwithstanding he uses the proper diligence.

5th. That construction would increase greatly the opportunities for collusion between the grantor and first purchasers, and would cause a new deed to be cut off by a pretended conveyance of any antiquity, first placed upon record.

6th. Twenty years of practice under these acts never elicited such a construction, as I believe, either by judicial opinion, or in the estimation of the bar, or of the community.

It was also suggested, on the argument, that the 8th section of the act of 1799 was repealed by the act of June, 1820, so as to prevent its operation on these conveyances. Not so. That act was to go into operation on the first day of January, 1821, and the repealing clause is also expressly postponed in its operation, until the same time.

My opinion therefore is, that the act of 1799, continued in force during these transactions in such manner as to make the deed from Cooper to Wallace *of no effect* against the defendant, he being a bona fide purchaser, for valuable consideration, without notice; and of course, that judgment should be rendered for the defendant.

Judgment for the plaintiff.

AFFIRMED by court of Errors, 1833, Hal. Dig. 352

Plume *v.* Bone.

## NOTE.

[Chancellor Williamson, assisted by Justice Ford, in October 1821, decided, in the case of the executors of Ann Plume, deceased, against Christian Bone and others —"That a mortgage given in February 1814, but not recorded till the 22d of November following, was notice to a mortgagee, who took her mortgage on the 4th of January 1815, and had it recorded on the 19th of the same month. In that case it was held, that there was nothing in the act of the 7th of June 1799, which made it absolutely necessary to the validity of a mortgage, that it should be recorded within thirty days after making it; and that a mortgage might be duly recorded within the provisions of the act, although the thirty days had previously expired; and that the registry of all mortgages duly recorded, was notice to all subsequent purchasers or mortgagees."]

The Reporter has been favored with the opinion delivered by Justice Ford in the above case, which is as follows:

Christian Bone made a mortgage to the other defendants the 11th of February 1814, which was recorded the 22d of November following, being more than thirty days after its execution; and upwards of forty days after the registry thereof, to wit, on the 4th of January 1815, he mortgaged the same premises to Ann Plume, which latter mortgage was registered the 24th of the same month. The premises being insufficient to satisfy both these mortgages, the question is, which of them is entitled to priority of payment.

This question depends on the construction of the act entitled " An act to register mortgages," passed the 7th of June, 1799; between the 5th and 10th sections of which, there seems, on the first reading, to be some opposition. By the 5th section, that mortgage is to have priority which is *first registered ;* but by the 10th section, unless the registry be made within thirty days after execution of a mortgage, it shall *be void* as against a subsequent mortgagee without notice ; that is, the *first recorded* mortgage shall *not have priority.* It seems to imply also, that if a mortgage be registered *any time within* thirty days after its execution, it shall not be void against one subsequently made.

It is evident, to my mind, that the legislature contemplated *two distinct classes* of mortgages, the *first* class comprehending those which are registered within thirty days after their execution, among all which, the 5th section assigns priority to the one *first registered ;* and a *second* class comprehending such only

as are *not* registered within thirty days, for which a separate regulation is provided in the 10th section, making them void as against a *subsequent.*bona fide mortgagee or purchaser *without notice.* The 5th and 10th sections operating on distinct objects or *classes*, cannot meet together and clash; each having its own sphere of action ; and a repugnancy can arise only by confounding together two classes which the legislature provided for separately and intended to keep distinct. This construction has been satisfactorily settled at law, in the case of *Den* v. *Roberts and Pintard*, 1 *South. Rep.* 315.

The mortgage for which the defendants now claim priority, is the *first registered* instrument; but inasmuch as it was not so registered *within thirty days* after its execution, it belongs to the *second class*, it can derive no aid from the 5th section, and must stand or fall according to the rule provided for it in the 10th ; and by this rule it must be postponed, unless the defendants can substantiate at least one of three things against the subsequent mortgage to Ann Plume ; 1st, That it is not bona fide ; 2d, That it was made without consideration, or 3d, That Ann Plume had notice of the defendant's mortgage before or at the time of taking her own. Neither of the two former are pretended. But the defendants say, that their mortgage was publicly registered more than forty days before Ann Plume took one ; they say it is presumable on the score of common prudence, that she searched the records before she lent money on a pledge of this land ; and that whether she did so or not, is immaterial, for that the registry itself of a mortgage is notice to all the world from the time it is duly proved and recorded.

This raises a question which I cannot learn has ever been decided *under our statute ;* a statute which differs in some respects, from the registering acts in England, and therefore is not bound by analogy to follow the construction of the latter. It seems moreover, evident that the registering acts would have been deemed notice if there had not stood in the way of it a train of decisions on the subject of taking securities, forming a system that could not be conveniently shaken, yet too artificial and subtil to deserve much favor here, and introduced there, as is said, not without weighty reasons against it.

This act certainly provides for the registering of " all mort-

gages," for the first section enacts that the clerk shall provide fit books for registering " all mortgages "; there is no restriction on the words ; it also enacts that he shall note the day of the month and year when " a mortgage," (doubtless meaning any mortgage) is delivered to him ; and this he is to do in " the margin of the abstract," plainly implying his duty is to record it. The severe penalty of $200 is annexed to a non performance of duty. Now if the registering a mortgage that has lain more than thirty days after its execution was conceived by the legislature to be a nugatory act, it is surprising they should order the clerk to do it at all, and more surprising that a penalty of such sore amount should be annexed to the non performance of it ; and yet what possible benefit could have been in their view beside the single one of its becoming notice from the time of its being registered ? After directing the clerk to provide fit books, they enact that " *every person,*" shall have access to them at proper seasons. I consider this to be a legislative recognition, that to search for incumbrances prior to lending money on mortgage is an act of common prudence, which they presumed every man would perform and therefore they secured to every man the privilege of access to the books. This presumption is one indicated by the statute and clearly growing out of its provisions. It is a rule more easily understood than the obscure doctrine of *tacking,* which it supersedes, and as a rule it can work no injustice to persons of ordinary prudence.

The objection, that when a statute requires notice to be given, it always means *actual* and never in any case *presumptive* notice, such as this would be, is not tenable. It would be a formidable objection if this statute required notice to be given, in the manner of giving notice of trial, notice of protest, and the like ; whereas here there is no person known to serve notice upon and therefore the statute does not require it to be given. If a person has notice or knowledge, in whatsoever way acquired, of a prior mortgage, it is all that the act intends.

I am therefore of opinion, that a mortgage duly proved or acknowledged, and registered more than thirty days after its execution, is notified thereby to everybody, from the time it is registered in the office ; but it is notice of no other facts than those which appear on the record. And as the complainant's

5

testatrix, Ann Plume, had this constructive notice of the defend-
ant's mortgage before she took her's from Christian Bone, it
ought to be postponed, and the defendant's mortgage is en-
titled to be first satisfied out of the premises.